## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER MASLOWSKI, ASHLEY VOSS, JACQUELINE SCHUMAN, ALEEMA HAWKS, and CINDY CARRASCO individually and on behalf of all others similarly situated, | Case No. |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| v. | Jury Trial Demanded |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | |
| **Defendant.** | |

Jennifer Maslowski, Ashley Voss, Jacqueline Schuman, Aleema Hawks, and Cindy Carrasco (collectively, "Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, allege the following against Defendant JPMorgan Chase Bank, National Association ("Chase" or "Defendant"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.      When dealing with consumer contracts, normally presented on a take-it-or-leave-it basis, legislatures around the nation have statutorily prohibited companies from taking advantage of customers through unfair acts. In the context of consumer fees, whether a fee is considered unfair turns on a simple principle: if the consumer will not receive a commensurate benefit from the fee, then the consumer must have had a practical opportunity to avoid the fee.

2.      Nowhere can this principle be seen more clearly than in the banking sector. Financial institutions earn enormous profits by charging fees for their services. For example, banks allow customers to write checks, and in return the customers promise that there will be funds in

their account to cover the check when it is deposited. If a customer breaks this understanding and writes a check without the funds to cover it (i.e., bounces a check), the bank will charge a fee to the customer that wrote the check, which the customer could have avoided by ensuring sufficient funds were in the account.

3.     On the other side of the transaction, however, the recipient of the check typically has no way to know whether a check he or she deposits is going to bounce. Because the depositor could not have reasonably known the check was bad, it is unfair to charge the depositor a fee for returning the check.

4.     Nevertheless, this is exactly what Chase did through what it refers to as "Deposited Item Returned Fees." By charging these Deposited Item Returned Fees, Chase unfairly targeted its customers with financial penalties for faulty checks the customers had no hand in issuing. Plaintiffs were shocked when they were charged these Fees because they did nothing wrong, yet were penalized by Chase. There was nothing Plaintiffs could do to avoid — or even anticipate — a Deposited Item Returned Fee assessed by Chase at the time the deposit was returned.

5.     By charging its customers significant fees in situations where the customer did nothing wrong and could not have avoided the fee through reasonable diligence, Chase acted in a manner that is unfair, oppressive, and against public policy.

6.     In fact, Chase all but acknowledged that its policy of charging Deposited Item Returned Fees was unfair and predatory when, in March 2023, Chase surreptitiously removed their disclosure of the Deposited Item Returned Fee altogether.

7.     Recent guidance from the Consumer Financial Protection Bureau ("CFPB") has reaffirmed the unlawful nature of Chase's Deposited Item Return Fee policy. In October 2022, the CFPB issued a compliance bulletin stating that it is an unfair act or practice to have a blanket policy of charging Deposited Item Return Fees anytime that a check is returned unpaid, irrespective of the circumstances or patterns of behavior on the account. The CFPB noted that

these fees cause substantial monetary injury for each returned item, which consumers cannot reasonably avoid because they lack information about and control over whether a check will clear.[1]

8. California, among other States, has recognized the unfair nature of these fees and has recently amended the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 17200, *et seq*., to expressly prohibit "junk fees" where a business reveals unavoidable fees later in the buying process. As California Attorney General Rob Bonta noted in a press release: "These deceptive fees prevent us from knowing how much we will be charged at the outset. They are bad for consumers … [and] cost Americans tens of billions of dollars each year."[2]

9. Accordingly, Plaintiffs, on behalf of themselves and the Class and Subclasses (defined below), now seek to hold Chase accountable for their unlawful and unfair policy, and seek damages, restitution, and injunctive relief, as set forth below.

## PARTIES

10. Plaintiff Jennifer Maslowski is, and at all times mentioned herein was, an individual citizen of the State of New York residing in the County of Rockland and held a Chase Total Checking account during the applicable statute of limitations period. Ms. Maslowski opened her Chase account in or around 1998 in New York. Her account is, therefore, located in New York.

11. Plaintiff Ashley Voss is, and at all times mentioned herein was, an individual citizen of the State of California residing in the County of Los Angeles and held a Chase Savings account during the applicable statute of limitations period. Ms. Voss opened her Chase account in 2014 while her address on record with Chase was in Wisconsin. Her account is, therefore, located in Wisconsin.

---

[1] Consumer Financial Protection Bulletin 2022–06, Unfair Returned Deposited Item Fee Assessment Practices (Oct. 26, 2022), available at: https://www.consumerfinance.gov/compliance/supervisory-guidance/cfpb-bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices/ (last accessed February 20, 2024).

[2] Attorney General Bonta's Sponsored Bill to Ban Hidden Fees in California Signed into Law (Oct. 7, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta%E2%80%99s-sponsored-bill-ban-hidden-fees-california-signed-law (last accessed February 20, 2024).

12.     Plaintiff Jacqueline Schuman is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in the County of DuPage and held a Chase College Checking account during the applicable statute of limitations period. Ms. Schuman opened her Chase account in or around 2018 in Illinois. Her account is, therefore, located in Illinois.

13.     Plaintiff Aleema Hawks is, and at all times mentioned herein was, an individual citizen of the State of New Jersey residing in the County of Essex and held a Chase Total Checking account during the applicable statute of limitations period. Ms. Hawks opened her Chase account in or around 2014 or 2015 in New Jersey. Her account is, therefore, located in New Jersey.

14.     Plaintiff Cindy Carrasco is, and at all times mentioned herein was, an individual citizen of the State of California residing in the County of Kern and held a Total Checking account during the applicable statute of limitations period. Ms. Carrasco opened her Chase account in or around 2003 in California. Her account is, therefore, located in California.

15.     Defendant Chase is a subsidiary of JPMorgan Chase & Company, a Delaware corporation. Defendant Chase is a national banking association with branches in 48 states and Washington, D.C. that is engaged in the business of providing, is engaged in the business of providing, among other things, retail banking services to consumers and businesses, including to Plaintiffs and members of the putative Class. Defendant operates banking centers, and thus conducts business, throughout the States of New York, Illinois, New Jersey, Wisconsin, and California among others. Chase is headquartered in New York City, New York. In 2022, Chase took in over $60 billion in noninterest revenue.[3]

## JURISDICTION AND VENUE

16.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of

---

[3]   *See* Form 10-K for JPMorgan & Chase Co. (2022) at 51. Available at: https://jpmorganchaseco.gcs-web.com/static-files/57c2ed73-8a15-47c2-94f0-e9e29ca87e2c (last accessed February 20, 2024).

interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

17.     This Court has jurisdiction over Defendant because it operates in this District, has its principal place of business in this District, and a substantial part of the unlawful business practices which give rise to this action occurred in this District.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### I.      DEPOSITED ITEM RETURNED FEES

19.     Deposited Item Returned Fees are levied when a check is returned because it cannot be processed against the originator's account. In other words, when Person A writes a check to Person B and the check bounces or is returned unpaid, the bank charges Person B a fee even though Person B had no reasonable means of knowing the check would not clear. There are a multitude of reasons why a check someone received would bounce, nearly all of which lie entirely outside the control of the depositor. The reason could be insufficient funds, a stop payment order issued by the check writer, a closed or foreign account, or even a minor discrepancy on the check itself. Even though the depositor has no control over the check, the Deposited Item Return Fees charged can range from $5 to over $30 and often vastly exceed the actual cost of processing the returned check.

20.     Deposited Item Return Fees are widespread within the banking industry. Most major banks and financial institutions levied them as part of their standard fee structure. If disclosed at all, Deposited Item Return Fees are often found in dense and convoluted legal agreements or associated fee schedules, making it difficult for consumers to discover them until they are actually charged. The ubiquitous and unavoidable nature of Deposited Item Returned Fees has raised concerns about the fairness and predatory nature of imposing penalties on the depositor,

particularly because these fees are not actually linked to any real administrative cost of check processing. In fact, these fees are nothing more than veiled revenue-generating tools that penalize innocent depositors for the actions of others.

21.    Recognizing the potential for abuse, the CFPB published Bulletin 2022-06 on November 7, 2022 (the "Bulletin"). The Bulletin, entitled *Unfair Returned Deposited Item Fee Assessment Practices*, highlights the CFPB's concerns about deceptive practices related to Deposited Item Return Fees, particularly in instances where fees are disproportionate to the actual costs incurred by the bank, or where customers were not adequately informed about the fees and their potential applicability.

22.    The CFPB deemed these fees unfair under the Consumer Financial Protection Act ("CFPA"). The CFPB took issue with financial institutions, like Chase, that charge consumers Returned Deposited Item Fees "for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account." The Bulletin provides in relevant part:

> The Consumer Financial Protection Act (CFPA) prohibits covered persons from engaging in unfair acts or practices. Congress defined an unfair act or practice as one that (A) "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and (B) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."
>
> Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.
>
> Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. **Depository institutions that charge Returned Deposited Item fees for returned checks impose concrete monetary harm on a large number of customers**.
>
> In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. **An injury is not reasonably avoidable unless consumers are fully informed of the**

6

**risk and have practical means to avoid it.** Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But **a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account**. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution before depositing the check or be able to pass along the cost of the fee to the check originator.

87 FR 66940, 66941 (emphases added).[4]

23.     The CFPB focused on the lack of benefit to consumers and the disproportionality associated with these fees, finding that "[c]heck processing is a service made broadly available to all depositors of checks, and **there is no separate benefit to consumers from having a deposited check returned, as opposed to paid**." *Id.* The CFPB further found that these fees are **not** "well-tailored to recoup costs" because "the fee is charged to depositors even where the depository institution incurs no such loss from the returned transaction, and institutions usually do not collect the fee in those limited circumstances where they actually incur a loss." *Id.* Evidently, the CFPB has signaled its intention to impose stricter oversight and raise legal challenges to these unfair and predatory practices.

## II.     CHASE IMPOSED A BLANKET "JUNK FEE" ON ALL RETURNED DEPOSITS, REGARDLESS OF CAUSE

24.     Chase operates a vast retail network across the country. Within this network, Chase offers a diverse range of deposit accounts, including a range of different checking, savings, and business accounts to customers like Plaintiffs and the putative Class and Subclass members.

25.     Upon opening a deposit account with Chase, each customer receives a comprehensive "Deposit Account Agreement" (the "Deposit Agreement"). This Deposit

---

[4] *See supra*, n. 1.

Agreement between Chase and the customer governs the terms and conditions of each deposit account held by Chase.[5]

26.     The Deposit Agreement establishes that a customer's account is located in the state where the person applied for the account.[6] However, if a customer applied for an account online, and Chase had an address on record in a state where it had a branch at the time of the application, the account is "located" in the state of the address on record with Chase. *Id.*

27.     While depositing a check, customers naturally anticipate receiving the funds. However, factors entirely outside their control can lead to a deposit being returned unpaid. This can occur due to the originator lacking sufficient funds, a stop-payment order issued by the originator, or even processing errors. These unpredictable circumstances can expose the depositor to unfair and unavoidable financial repercussions.

28.     The Deposit Agreement is an adhesive contract drafted by Chase, which it periodically amended. For example, Chase revised its Deposit Agreement on or around March 19, 2023. *See* Ex. A. Before that, Chase revised the Deposit Agreement on or around October 16, 2022.[7] Chase is the only party to the contract which may amend the terms of the Deposit Agreement; customers are unable to do so.[8]

29.     The Deposit Agreement confirms that Chase had a blanket policy of charging a Deposited Item Returned Fee on attempted deposits that were returned unpaid, regardless of the underlying facts or circumstances.

---

[5] *See* Chase Deposit Agreement (effective March 19, 2023), attached hereto as Exhibit A ("2023 Deposit Agreement"), Deposit Account Agreement, at 5 of 26.

[6] *Id.*, § IX Other Legal Terms, A. Rules Governing Your Account at 22 of 26.

[7] *See* Chase Deposit Agreement (effective October 16, 2022) *generally*, attached hereto as Exhibit B ("2022 Deposit Agreement").

[8] *Id.*, § IX Other Legal Terms, D. Changes to the Agreement at 22 of 26.

30.    Section III(A)(5) of the October 2022 Deposit Agreement provided:

> If you deposit or cash a check or other item and (1) the paying bank returns it to us unpaid; (2) the paying bank or the issuer of a check demands that we repay them because the check was altered, forged or unauthorized, is missing a signature or endorsement, or has a forged endorsement; or (3) the sending bank or the originator of an item demands that we return the item because it was unauthorized, sent to the wrong account number or procured by fraud, we may pay the return or demand, and subtract the funds from the balance in your account or in other accounts for which you are an owner, or charge part of the item to each, even if you have already withdrawn the funds. If we have reason to believe that any of the events in the previous sentence has occurred or may occur or that the check or other item should not have been paid or may not be paid for any other reason, we may place a hold on the funds or move them to a non-customer account until we determine who is entitled to them. **If a deposited or cashed item is returned, we <u>will</u> charge you a Deposited Item Returned Fee or a Cashed Check Returned Fee. Refer to the Fee Schedule for specific fee information.**

31.    *See* Ex. B at 8 (emphasis added). The March 2023 Deposit Agreement deleted the disclosure regarding the fee. Like the Deposit Agreement, Chase also revised the Fee Schedule to eliminate reference to the Deposited Item Return Fee.[9]

32.    While depositing a check, customers naturally anticipate receiving the funds. However, factors entirely outside their control can lead to a deposit being returned unpaid. This can occur due to the originator lacking sufficient funds, a stop-payment order issued by the originator, or even processing errors. These unpredictable circumstances can expose the depositor to unfair and unavoidable financial repercussions.

33.    Consumers attempting to deposit funds, such as Plaintiffs, lacked any control over whether the deposit would be returned, and had no way of protecting themselves against the possibility of the deposit being returned and being charged a fee. Depositors could not realistically

---

[9] *Compare* Chase Fee Schedule (effective March 19, 2023), attached hereto as Exhibit C ("2023 Fee Schedule") with Fee Schedule (effective October 16, 2022), attached hereto as Exhibit D ("2022 Fee Schedule"), at 11 of 21 (showing the "Deposited Item Returned" fee of $12).

verify with the originator's institution whether there were sufficient funds in the issuer's account before depositing an item.

34.     Chase's blanket policy of charging the "Deposited Item Returned Fee" on all returned deposits, regardless of the origin of the check or the cause of its return, raises concerns regarding fairness, effectively penalizing them for circumstances outside of their control.

35.     As one consumer succinctly stated: "I was charge[d] a Deposit Item Returned Fee without my knowledge because I tried to cash a check issued by a cashback website. I did not know the check could not be cashed and I am unable to verify if the check is valid before I deposit it. This is the most unreasonable fee I have ever seen[.]"[10]

**III.     CHASE CHARGED PLAINTIFFS DEPOSITED ITEM RETURNED FEES**

        **A.     <u>Plaintiff Jennifer Maslowski</u>**

36.     On or around 1998 or 1999, Plaintiff Jennifer Maslowski opened a Chase Total Checking account in or around Nyack, New York.

37.     Ms. Maslowski's Account was located in the State of New York at the time she opened the account and remains so to this day.

38.     On or around August 29, 2022, Ms. Maslowski attempted to deposit a check into her Chase account.

39.     At the time she attempted to deposit the check into her Chase account, Ms. Maslowski had no reason to believe that the check would be returned unpaid.

40.     On or around August 31, 2022, to Ms. Maslowski's surprise and by no fault of her own, the check she deposited was returned unpaid. Chase charged Ms. Maslowski a Deposited

---

[10]*See* Consumer Complaint Database. Available at: https://www.consumerfinance.gov/data-research/consumer-complaints/search/?date_received_max=2024-02-20&date_received_min=2011-12-01&has_narrative=true&page=1&searchField=all&searchText=5990528&size=25&sort=created_date_desc&tab=List (last accessed February 20, 2024).

Item Returned Fee of $12.00. The Deposited Item Returned Fee was deducted from the balance of Ms. Maslowski's account.

41.     Because the $12 Deposited Item Returned Fee which Chase charged Ms. Maslowski was assessed pursuant to Chase's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Deposited Item Returned Fee was unfair and unlawful.

### B.     Plaintiff Jacqueline Schuman

42.     On or around 2018, Plaintiff Jacqueline Schuman opened a Chase College Checking account with Chase in or around Naperville, Illinois.

43.      Ms. Schuman's Chase account was located in the State of Illinois at the time she opened the account and remains so to this day.

44.     On or around January 5, 2022, Ms. Schuman attempted to deposit a check into her Chase account.

45.     At the time Ms. Schuman attempted to deposit the check into her Chase account, she had no reason to believe that the check would be returned unpaid.

46.     The same day, to Ms. Schuman's surprise and by no fault of her own, the check was returned unpaid. Chase charged Ms. Schuman a Deposited Item Returned Fee of $12.00. The Deposited Item Returned Fee was deducted from the balance of Ms. Schuman's account.

47.      Because the Deposited Item Returned Fee which Chase charged Ms. Schuman was assessed pursuant to Chase's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Deposited Item Returned Fee was unfair and unlawful.

11

C.     **Plaintiff Aleema Hawks**

48.     On or around 2014 or 2015, Plaintiff Aleema Hawks opened a Chase Total Checking account with Chase in or around South Orange, New Jersey.

49.     Ms. Hawks' Chase account was located in the State of New Jersey at the time she opened the account and remains so to this day.

50.     On or around October 14, 2022, Ms. Hawks attempted to deposit a check into her Chase account.

51.     At the time Ms. Hawks attempted to deposit the check into her Chase account, she had no reason to believe that the check would be returned unpaid.

52.     The same day, to Ms. Hawks' surprise and by no fault of her own, the check was returned unpaid. Chase charged Ms. Hawks a Deposited Item Returned Fee of $12.00. The Deposited Item Returned Fee was deducted from the balance of Ms. Hawks' account.

53.     Because the Deposited Item Returned Fee which Chase charged Ms. Hawks was assessed pursuant to Chase's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Deposited Item Returned Fee was unfair and unlawful.

D.     **Plaintiff Ashley Voss**

54.     On or around March 22, 2014, Plaintiff Ashley Voss opened a Savings account with Chase in or around Racine, Wisconsin.

55.     Ms. Voss's Account was located in the State of Wisconsin at the time she opened the account and remains so to this day. At the time Ms. Voss opened the Account, the old Deposit Agreement and corresponding Fee Schedule (i.e., before March 19, 2023) were in effect.

56.     On or around November 24, 2021, Ms. Voss attempted to deposit a check into her

Chase Savings account.

57.    At the time Ms. Voss attempted to deposit the check into her Chase account, she had no reason to believe that the check would be returned unpaid.

58.    The same day, to Ms. Voss's surprise and by no fault of her own, the check was returned unpaid. Chase charged Ms. Voss a Deposited Item Returned Fee of $12.00. The Deposited Item Returned Fee was deducted from the balance of Ms. Voss's account.

59.    Because the Deposited Item Returned Fee which Chase charged Ms. Voss was assessed pursuant to Chase's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Deposited Item Returned Fee was unfair and unlawful.

### E.    Plaintiff Cindy Carrasco

60.    In or around 2003, Plaintiff Cindy Carrasco opened a Total Checking account with Chase in or around Delano, California.

61.    Ms. Carrasco's Chase account was located in the State of California at the time she opened the account and remains so to this day.

62.    On or around October 27, 2022, Ms. Carrasco attempted to deposit a check into her Chase Total Checking account.

63.    At the time Ms. Carrasco attempted to deposit the check into her Chase account, she had no reason to believe that the check would be returned unpaid.

64.    The same day, to Ms. Carrasco's surprise and by no fault of her own, the check was returned unpaid. Chase charged Ms. Carrasco a Deposited Item Returned Fee of $12.00. The Deposited Item Returned Fee was deducted from the balance of Ms. Carrasco's account.

65. Because the Deposited Item Returned Fee which Chase charged Ms. Carrasco was assessed pursuant to Chase's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Deposited Item Returned Fee was unfair and unlawful.

## CLASS DEFINITION AND ALLEGATIONS

66. Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated.

67. Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

**Nationwide Class** (the "**Class**")
All individuals who, during the applicable statute of limitations, had or have accounts with Chase and were charged a Deposited Item Returned Fee by Chase.

**New York State Class** (the "**New York Subclass**")
All individuals who, during the applicable statute of limitations, had or have accounts with Chase located in New York and were charged a Deposited Item Returned Fee by Chase.

**Illinois State Subclass** (the "**Illinois Subclass**")
All individuals who, during the applicable statute of limitations, had or have accounts with Chase located in Illinois and were charged a Deposited Item Returned Fee by Chase.

**New Jersey State Subclass** (the "**New Jersey Subclass**")
All individuals who, during the applicable statute of limitations, had or have accounts with Chase located in New Jersey and were charged a Deposited Item Returned Fee by Chase.

**California State Class** (the "**California Subclass**")
All individuals who, during the applicable statute of limitations, had or have accounts with Chase located in California and were charged a Deposited Item Returned Fee by Chase.

68. Excluded from the Class and Sub-classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and

associated court staff assigned to this case.

69.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class and Sub-classes before the Court determines whether certification is appropriate.

70.     The proposed Class and Sub-classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

71.     Plaintiffs expressly disclaim any intent to seek recovery in this action for personal injuries that they or any Class member may have suffered.

72.     **Numerosity**.  This action is appropriately suited for a class action. The members of the Class and Sub-classes are so numerous that the joinder of all members is impracticable.  The precise number of Class and Sub-class members is unknown to Plaintiffs; however, Plaintiffs are informed, believe, and thereon allege, that each proposed Class and Sub-class contains thousands of accountholders who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

73.     **Commonality.**  This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

   a.  Whether Defendant's assessment of Deposited Item Returned Fees within the applicable statute of limitations was unfair, deceptive, or misleading;

   b.  Whether Defendant was unjustly enriched as a result of charging Plaintiffs and the Class and Sub-classes the "Deposited Item Return Fee";

   c.  Whether Defendant's conduct, as alleged herein, constitutes a violation of New York's Consumer Protection and Deceptive Acts and Practices Act, codified at N.Y. Gen. Bus. Law § 349 (the "GBL § 349");

   d.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, codified at 815 Ill. Comp. Stat. § 505/1, *et seq*. (the "ICFA");

e. Whether Defendant's conduct, as alleged herein, constitutes a violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* (the "NJCFA");

f. Whether Defendant's conduct, as alleged herein, constitutes a violation of Cal. Civ. Code § 1750, *et seq.*;

g. Whether Defendant's conduct, as alleged herein, constitutes a violation of Cal. Bus. & Prof. Code § 17200, *et seq.*;

h. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

i. Whether Plaintiffs and the Class and Sub-class are entitled to declaratory and injunctive relief and the nature of that relief.

74. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class and Subclasses, because, *inter alia*, all Class and Sub-class members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiffs' claims are typical of the Class and Sub-class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Sub-classes. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-classes.

75. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class and Sub-classes. Plaintiffs and the Class and Sub-classes each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Deposited Item Returned Fees. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Sub-classes and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class or Sub-classes, and Defendant has no defenses unique to Plaintiffs.

76.   **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Sub-class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or one of the Sub-classes, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class or Sub-class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

77.   Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class and Subclasses, and other equitable relief on grounds generally applicable to the entire Class and the Sub-classes, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class and Sub-classes are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Class and Sub-classes will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to commit the violations alleged, and the members of the Class and Sub-classes and the general public may continue to be unfairly treated.

78.   Defendant has acted and refused to act on grounds generally applicable to the Class and the Sub-classes, making final injunctive relief appropriate with respect to the Class as a whole.

## COUNT I
## UNJUST ENRICHMENT
### (On behalf of the Class and Sub-classes)

79.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–78 as if fully set forth herein.

80.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Sub-classes against Defendant.

81.     Plaintiffs and the members of the Class and Sub-classes conferred a benefit on Defendant, which Defendant knew about, when they enrolled in Defendant's deposit accounts and were charged Deposited Item Returned Fees.

82.     Plaintiffs and members of the Class and Sub-classes were, and many continue to be, customers of Defendant with deposit accounts. They reasonably believed that Defendant would not charge them unreasonable fees beyond their control. Plaintiffs and members of the Class and Sub-classes suffered financial losses when they were charged Deposited Item Returned Fees in the form of funds deducted from their accounts.

83.     Defendant either knew or should have known that the Deposited Item Returned Fees taken from Plaintiffs and the Sub-classes were taken without providing any additional service or value to their customers. By charging Deposited Item Returned Fees, Defendant unjustly enriched itself by taking a benefit, in the form of a $12 charge each time an item was returned, from each of their customers' accounts without providing any additional service or value to their customers, including Plaintiffs and members of the Class and Sub-classes. Defendant has accepted and retained these benefits even though Defendant failed to provide any service or product to the customer, making Defendant's retention unjust.

84.     By its wrongful acts and omission described herein, including charging fees for actions beyond the customer's control, and for which consumers had absolutely no way of avoiding, Defendant was unjustly enriched at the expense of Plaintiffs and the members of the Class and Sub-classes.

85.   Plaintiffs and the Class and Sub-classes detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

86.   Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative Class and Sub-classes members.  It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

87.   Plaintiffs and the members of the Class and Sub-classes have been damaged as a direct and proximate result of Defendant's unjust enrichment.

88.   Plaintiffs and the members of the Class and Sub-class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

89.   As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the members of the Class and Sub-classes are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

**COUNT II**
**VIOLATION OF N.Y. GBL § 349**
**(Plaintiff Maslowski on behalf of**
**themselves and the New York Sub-class)**

90.   Plaintiffs Maslowski repeats and realleges each and every allegation contained in paragraphs 1–89 as if fully set forth herein.

91.   Plaintiff Maslowski brings this claim individually and on behalf of the members of the New York Sub-class against Defendant.

92.   Plaintiff Maslowski maintained Chase accounts located in New York, pursuant to the Deposit Agreement, during the applicable statute of limitations period.

93.   Under New York General Business Law § 349 ("GBL § 349"), Defendant is prohibited from engaging in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." To support a claim under GBL § 349, a plaintiff must show: (1) that the defendant's acts were consumer oriented; (2) that the acts or practices are

"deceptive or misleading in a material way"; and (3) the plaintiff has been injured as a result. *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d, 467, 478 (S.D.N.Y. 2014) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).

94.     Charging Deposited Item Return Fees in the context of consumer retail deposit accounts impacts thousands, if not millions, of consumers throughout New York and the country, and is therefore consumer oriented. Chase's blanket policy of charging Deposited Item Return Fees disproportionately impacted vulnerable consumers, which is fundamentally unfair and exploits disadvantaged groups.

95.     Defendant charged Deposited Item Returned Fees in the regular course of its business and in the course of conducting trade and commerce and charged Ms. Maslowski Deposited Item Returned Fees in the course of conducting trade and commerce. Defendant unilaterally imposed such charges on Plaintiffs Maslowski and all New York Sub-class members and automatically debited their accounts accordingly. This issue unquestionably impacts the public interest in New York.

96.     Charging Deposited Item Returned Fees is deceptive because customers expect that the checks they just deposited will generate additional funds that will be available. In other words, customers assume that the balance on their account will increase by the amount of the check they deposit. Charging these fees, for reasons beyond the customer's control, is deceptive because it undermines customers' expectations that additional funds will be in their account. While divulged in the deposit agreements, these fees are difficult for consumers to comprehend because they are often buried in complex legal documents and many consumers may believe these fees are actually associated with situations where a customer's account does not have enough funds and, therefore, the check they write "bounces." Customers do not expect to be charged fees in situations where the customer has no control or fault.

97.     Further, there was nothing Defendant's customers could do to avoid paying these illegal, unconscionable, and predatory fees. There was no justification for imposing these blanket fees, which the CFPB has deemed "junk fees." Charging Deposited Item Return Fees is inherently unfair where the customer has no control and must incur penalties by no fault of their own. By imposing these fees, which provided no measurable service or product to its customers, including Plaintiff Maslowski, Defendant engaged in unfair business practice in violation of New York General Business Law.

98.     Defendant's unlawful collection of the Deposited Item Returned Fees during the applicable statute of limitations constitutes consumer-oriented conduct. These fees are part of broader scheme of imposing fees and charges in connection with maintaining an account at Chase and impacts millions of customers. The improper and illegal Deposited Item Returned Fees represent funds in the possession of Defendant that rightfully belong to members of the New York Sub-class, including Plaintiff Maslowski.

99.     Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."   12 U.S.C. § 5531(c)(1).

100.     The CFPB — through Bulletin 2022-06 — has determined that Deposited Item Returned Fees, such as those charged by Chase, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

101.     Defendant wrongfully obtained money from its customers with accounts located in New York, including Plaintiffs Maslowski. Plaintiffs Maslowski and the New York Sub-class sustained actual damages as a result of Defendant's deceptive and unfair practice.   That actual

damage is measured by the amount of the Deposited Item Returned Fees charged by Defendant. In the case of Ms. Maslowski, that amount was $12.00 each.

102.    Plaintiffs Maslowski and the New York Sub-class have been damaged in the amount of the Deposited Item Return Fees collected by Defendant from customers with accounts located in New York. Plaintiff Maslowski and the New York Subclass are entitled to reimbursement in amounts to be determined at a later date, but not less than the full amount of the fees, and interest thereon, which Defendant has taken from them.

103.    By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes a deceptive and unfair practice committed in the course of trade and commerce, that caused actual damages to Ms. Maslowski and the New York Sub-class, in violation of GBL § 349, and Defendant is liable to Ms. Maslowski and the New York Sub-class for damages and reasonable attorneys' fees pursuant to GBL § 349(h).

### COUNT III
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 Ill. Comp. Stat. ("ILCS") § 505/1, *et seq.*
(Plaintiff Schuman on behalf of herself and the Illinois Class)**

104.    Plaintiff Schuman repeats and realleges each and every allegation contained in paragraphs 1–103 as if fully set forth herein.

105.    Plaintiff Schuman brings this claim individually and on behalf of the members of the Illinois Sub-class against Defendant.

106.    Plaintiff Schuman maintains a Chase account located in Illinois, pursuant to the Deposit Agreement.

107.    Plaintiff and the Illinois Sub-class members are persons within the context of the ICFA, 815 ILCS § 505/1(c), and Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

108.    At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f).

109.    Plaintiff and the proposed Illinois Sub-class are "consumers" within the meaning of the ICFA, 815 ILCS § 505/1(e).

110.    The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce . . . ." ICFA, 815 ILCS § 505/2.

111.    The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2. This includes conduct that "creates a likelihood of confusion or misunderstanding" irrespective of whether the person has been in fact misled, deceived, or damaged thereby. 815 ILCS 505/2; 815 ILCS 510/2(a)(12).

112.    The ICFA "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services*, 536 F.3d 663, 666 (7th Cir. 2008) (*citing* the Illinois Supreme Court's holding in *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (Ill. 2022)).

113.    The ICFA provides a broad private right of action for "[a]ny person who suffers actual damage as a result of a violation of this Act" and enables such person to bring an action against any business entity that violates the statute. 815 ILCS § 505/10a(a); 815 ILCS § 505/1(c). In addition, the ICFA provides for injunctive relief where appropriate as well as reasonable attorney's fees and costs. 815 ILCS 505/10a(c).

114.    Defendant charged Deposited Item Returned Fees in the regular course of its business and in the course of conducting trade and commerce and charged Ms. Schuman a Deposited Item Returned Fee in the course of conducting trade and commerce. Defendant unilaterally imposed such charges on Ms. Schuman and the members the Illinois Sub-class members and automatically debited their accounts accordingly.

115.    Charging Deposited Item Returned Fees is deceptive because customers expect that the checks they just deposited will generate additional funds that will be available. In other words, customers assume that the balance on their account will increase by the amount of the check they deposit. Charging these fees, for reasons beyond the customer's control, is deceptive because it undermines customers' expectations that additional funds will be in their account. While divulged in the deposit agreements, these fees are difficult for consumers to comprehend because they are often buried in complex legal documents and many consumers may believe these fees are actually associated with situations where a customer's account does not have enough funds and, therefore, the check they write "bounces." Customers do not expect to be charged fees in situations where the customer has no control or fault.

116.    Defendant violated the ICFA by charging unlawful fees on its customers in the form of Deposited Item Returned Fees, which their customers could do nothing to avoid. There was no justification for imposing these blanket fees during the applicable statute of limitations, which the CFPB has deemed "junk fees." Charging Deposited Item Return Fees is inherently unfair where the customer has no control and must incur penalties by no fault of their own. By imposing these fees, which provided no service or product to its customers, including Ms. Schuman and the members of the Illinois Sub-class, Defendant engaged in unfair business practice in violation of the ICFA.

117.    Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."   12 U.S.C. § 5531(c)(1).

118.    The CFPB — through Bulletin 2022-06 — has determined that Deposited Item Returned Fees, such as those charged by Defendant, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and

practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

119.    Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Deposited Item Returned Fees is deceptive and unfair and constitutes a violation of the ICFA.

120.    Ms. Schuman and all Illinois Sub-class members sustained actual damages as a result of Defendant's unfair practice. The actual damages sustained by Ms. Schuman and all Illinois Sub-class members were proximately caused by Defendant's unfair practice of charging Deposited Item Returned Fees.  In other words, had Defendant not engaged in the unfair practice of charging Deposited Item Returned Fees, Ms. Schuman and the Illinois Sub-class members would not have sustained damages. The actual damage is measured by the amount of the Deposited Item Returned Fees charged by Defendant. In the case of Ms. Schuman, that amount was $12.00 for each returned item.

121.    By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes an unfair practice committed in the course of trade and commerce, intended to be relied upon by accountholders, that proximately caused actual damages to Ms. Schuman and the Illinois Sub-class, in violation of 815 ILCS § 505/2, and Defendant is liable to Ms. Schuman and the Illinois Sub-class for the damages they have sustained as a result of Defendant's actions.

122.    Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Sub-class are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorneys' fees under 815 ILCS § 505/10a.

<u>**COUNT IV**</u>
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A.§ 56:8-1** *et seq.*
**(Plaintiff Hawks on behalf of herself and the New Jersey Sub-class)**

123.    Plaintiff Hawks repeats and realleges each and every allegation contained in paragraphs 1–122 as if fully set forth herein.

124.    Plaintiff Hawks brings this claim individually and on behalf of the members of the New Jersey Sub-class against Defendant.

125.     Plaintiff Hawks is a "person" and a "consumer" pursuant to N.J.S.A. §56:8-1(d), as she and all members of the Sub-class are natural persons as defined therein.

126.     Defendant is a "person" pursuant to N.J.S.A. §56:8-1(d), as it is a business entity, corporation, or company as defined therein.

127.     Defendant engages in the sale of merchandise pursuant to N.J.S.A. §56:8-1(e).

128.     Plaintiff Hawks maintained a Chase account located in New Jersey, pursuant to the Deposit Agreement, during the applicable statute of limitations period.

129.     The NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice;. . . ."  N.J.S.A. § 56:8-2. To state a claim under the NJCFA, a plaintiff must allege: (1) unlawful conduct by Defendant; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 85 A.3d 947, 960 (N.J. 2014) (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 964 A.2d 741, 749 (N.J. 2009)).

130.     Defendant charged Deposited Item Returned Fees in the regular course of its business and in the course of conducting trade and commerce and charged Ms. Hawks a Deposited Item Returned Fee in the course of conducting trade and commerce. Defendant unilaterally imposed such charges on Plaintiff Hawks and all New Jersey Sub-class members and automatically debited their accounts accordingly.

131.     Defendant imposed unlawful fees on its customers in the form of Deposited Item Returned Fees, which their customers could do nothing to avoid. There was no justification for imposing these blanket fees during the applicable statute of limitations, which the CFPB has

deemed "junk fees." By imposing these fees, which provided no service or product to its customers, including Plaintiff Hawks, Defendant engaged in an unconscionable commercial practice in violation of the NJCFA.

132.    Charging these fees disproportionately impacted vulnerable consumers, which is fundamentally unfair and exploits disadvantaged groups. These fees, imposed regardless of the actions of the account holder, provide no additional service to consumers. In addition, charging Deposited Item Return Fees is deceptive because customers do not expect to be charged fees in situations where the customer has no control or fault.

133.    Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."   12 U.S.C. § 5531(c)(1).

134.    The CFPB — through Bulletin 2022-06 — has determined that Deposited Item Returned Fees, such as those charged by Defendant, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

135.    Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Deposited Item Returned Fees is deceptive and unfair and constitutes a violation of the NJCFA.

136.    Defendant's unlawful acts cause Plaintiff and the Sub-class to suffer an ascertainable loss. Specifically, Defendant's unlawful acts caused Plaintiff Hawks and the New Jersey Sub-class to suffer an ascertainable loss of, including but not limited to, the amount of the Deposited Item Returned Fees charged by Defendant. In the case of Ms. Hawks, that ascertainable loss was the amount of $12.00.

137.    As a result, Plaintiff Hawks and the New Jersey Sub-class have been damaged in the amount of the Deposited Item Return Fees collected by Defendant from customers with

accounts located in New Jersey. Plaintiff Hawks and the New Jersey Sub-class are entitled to recovery of their ascertainable losses, treble damages, and reasonable attorneys' fees pursuant to N.J.S.A. § 56:8-19.

## COUNT V
### VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")
### Cal. Civ. Code § 1750, *et seq.*
### (Plaintiff Carrasco on behalf of herself and the California Subclass)

138.    Plaintiff Carrasco repeats and realleges each and every allegation contained in paragraphs 1–137 as if fully set forth herein.

139.    Plaintiff Carrasco brings this claim individually and on behalf of the members of the California Sub-class against Defendant.

140.    Plaintiff Carrasco maintained a Chase account located in California, pursuant to the Deposit Agreement, during the applicable statute of limitations period.

141.    California's Consumer Legal Remedies Act ("**CLRA**"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

142.    Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

143.    The deposit accounts that Plaintiff Carrasco and the members of the California Sub-class opened with Defendant are "services" as defined in Cal. Civ. Code § 1761(b).

144.    Plaintiff Carrasco and the members of the California Sub-class are "consumers" as defined in Cal. Civ. Code § 1761(d).

145.    Defendant imposed unfair, unconscionable, and predatory fees on its customers in the form of Deposited Item Returned Fees, which their customers could do nothing to avoid. There was no justification for imposing these blanket fees during the applicable statute of limitations, which the CFPB has deemed "junk fees." By imposing these fees, which provided no service or product to its customers, including Plaintiff Carrasco and the members of the California Sub-class, Defendant engaged in unfair business practice in violation of the CLRA.

28

146.    Defendant's conduct violates at least the following enumerated CLRA provisions:

    a.   Cal. Civ. Code § 1770(a)(14): Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and

    b.   Cal. Civ. Code § 1770(a)(19): Inserting an unconscionable provision in the contract.

147.    Charging Deposited Item Returned Fees is a predatory practice that impacts thousands, if not millions, of consumers throughout California and the country, and they disproportionately impact vulnerable consumers. These blanket fees exploit consumers and can reinforce financial inequality. Thus, Defendant's actions, as alleged herein, affect the public interest.

148.    These charges, which were automatically debited from consumers' accounts, were unilaterally imposed, were deceptive, unfair, predatory in nature, and unconscionable. The CFPB — through Bulletin 2022-06 — determined that Deposited Item Returned Fees, such as those charged by Defendant, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

149.    Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Deposited Item Returned Fees is deceptive and unfair and constitutes a violation of the CLRA.

150.    As a result of Defendant's actions, Plaintiff Carrasco and the members of the California Sub-class sustained actual damages.  That actual damage is measured by the amount of the Deposited Item Returned Fees charged by Defendant. In the case of Ms. Carrasco, that amount was $12.00.

151.    On January 8, 2024, a CLRA demand letter was sent to Defendant pursuant to Cal. Civ. Code § 1782.  This letter provided notice of Defendant's violation of the CLRA and demanded that Defendant correct the unlawful and deceptive practices alleged herein. Defendant did not offer

any remedy to Plaintiff and each Sub-class member. Accordingly, Plaintiff seeks all monetary relief available under the CLRA.

152.    Plaintiff Carrasco and the members of the California Sub-class are entitled to reimbursement in amounts to be determined, but not less than the full amount of the fees, and interest thereon, which Defendant has taken from Plaintiff Carrasco and members of the California Sub-class, as well as injunctive relief, reasonable attorneys' fees and costs, punitive damages, and any other relief the Court deems proper, pursuant to California Civil Code § 1780.

**COUNT VI**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**Bus. Prof. Code § 17200, et seq.**
**(Plaintiff Carrasco on behalf of herself and the California Subclass)**

153.    Plaintiff Carrasco repeats and realleges each and every allegation contained in paragraphs 1–153 as if fully set forth herein.

154.    Plaintiff Carrasco brings this claim individually and on behalf of the members of the California Sub-class against Defendant.

155.    California's Unfair Competition Law (the "UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

156.    Defendant's acts and omissions as alleged herein constitute business acts and practices.

157.    The purpose of the UCL purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to serve as the basis of an independently actionable unfair competition claim and sweeps within its scope acts and practices not specifically proscribed by any other law.

158.    The acts alleged herein are "unlawful" under the UCL in that they violate at least the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*.

159.    The UCL expressly provides for injunctive relief and contains provisions denoting its public purpose. A claim for injunctive relief under the UCL is brought by a plaintiff acting in the capacity of a private attorney general. Although the private litigant controls the litigation of an unfair competition claim, he or she is not entitled to recover compensatory damages for his or her own benefit, but only disgorgement of profits made by the defendant through unfair competition in violation of the statutory scheme, or restitution to victims of the unfair competition.

160.    In addition, as alleged herein, Defendant's conduct violates the UCL because charging consumers "junk fees" that provide no tangible service or benefit to the consumers violates public policy. The harm and adverse impact of Defendant's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives. The harm to Plaintiff Carrasco and the members of the California Sub-class arising from Defendant's unlawful practices relating to the imposition of the improper, unfair, and predatory fees outweighs the utility, if any, of those practices.

161.    Charging Deposited Item Returned Fees is a predatory practice that impacts thousands, if not millions of consumers throughout California and the country, and they disproportionately impact vulnerable consumers. These blanket fees exploit consumers and can reinforce financial inequality. Defendant's unlawful business practices are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff Carrasco and the members of the California Sub-class, and the general public. Any countervailing benefits to consumers or competition did not outweigh this injury.  Defendant's conduct damaged Plaintiff Carrasco and the members of the California Sub-class as they have collectively been forced to pay millions of dollars in improper fees Defendant's unlawful acts and practices complained of herein affect the public interest.

162.    Moreover, Defendant's conduct violates the UCL because it is unfair to implement a blanket practice of charged Deposited Item Returned Fees to consumers for all returned checks irrespective of the circumstances or any action taken by the accountholder.

163.    Defendant's conduct was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could have reasonably avoided.

164.    As a direct and proximate result of Defendant's violations of the UCL, Plaintiff Carrasco and the members of the California Sub-class have been charged improper and unlawful Deposited Item Returned Fees, which were automatically debited from their accounts, and Defendant has received income, profits, and other benefits, which it would not have received if it had not violated the UCL. Plaintiff Carrasco and the members of the California Sub-class suffered an ascertainable loss and actual damages as a result of Defendant's conduct.

165.    Defendant's conduct caused and may continue to cause substantial injury to Plaintiff and the members of the California Sub-class.  Plaintiff and the members of the California Sub-class have suffered, and may continue to suffer in the future, injury in fact as a result of Defendant's unlawful conduct. Thus, injunctive relief enjoining Defendant's unlawful practices is proper.

166.    Unless the Court grants injunctive relief compelling Defendant to disgorge itself of the ill-gotten gains it realized through by charging Returned Item Chargeback Fees and create a constructive trust to provide relief for Plaintiff Carrasco and the members of the California Subclass, representing the broader public interest, these individuals will have no avenue to hold Defendant accountable for its misconduct.

167.    Plaintiff Carrasco, on behalf of the members of the California Subclass, requests that he be awarded all relief as may be available by law, pursuant to Cal. Bus. Prof. Code § 17203.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated members of the Class and Sub-classes, respectfully requests that the Court enter judgment against Defendant in the form of an Order:

A.    Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal

Rules of Civil Procedure and naming Plaintiffs as a representative of the Class and Plaintiffs' undersigned attorneys as Class Counsel to represent the Class and Sub-class Members;

B.     Naming Plaintiffs Maslowski as the representative of the New York Sub-class;

C.     Naming Plaintiff Schuman as the representative of the Illinois Sub-class;

D.     Naming Plaintiff Hawks as the representative of the New Jersey Sub-class;

E.     Naming Plaintiff Carrasco as the representative of the California Sub-class;

F.     Declaring that Defendant's conduct violated the laws referenced herein;

G.     Finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

H.     Awarding actual, consequential, punitive, statutory, and treble damages;

I.     Awarding applicable prejudgment and post-judgment interest;

J.     For injunctive relief as pleaded or as the Court may deem proper;

K.     For disgorgement and restitution to Plaintiffs and the Class and/or Sub-class members of all monies received or collected from Plaintiffs and the Class and/or Sub-class members and all other forms of equitable relief;

L.     Awarding Plaintiffs and the Class and Sub-classes' reasonable attorneys' fees and expenses and costs of suit;

M.     For such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury as to all triable issues.


Dated: February 20, 2024                    Respectfully submitted,


By: */s/ Lisa R. Considine*

**SIRI & GLIMSTAD LLP**
Lisa R. Considine

David J. DiSabato (*Pro Hac Vice to be filed*)
Oren Faircloth (*Pro Hac Vice to be filed*)
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: lconsidine@sirillp.com
Email: ddisabato@sirillp.com
Email: ofaircloth@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class and
Sub-classes*